hWALTZER, Judge.
STATEMENT OF THE CASE
Relator, D.W., filed a petition for adoption of his sixteen year old stepson, B.A.D. Relator, J.W., is the child’s mother. The adoption is being opposed by respondent, the child’s biological father, who lives in Panama City Beach, Florida.
The record contains a copy of the amended final judgment rendered in Florida on 21 May 1993 terminating the biological parents’ marriage, finding that shared parental responsibility is in the best interest of the child and granting residential custody to the respondent subject to the mother’s liberal right of visitation. At that time the minor child had been living with the biological father since late 1991. The judgment provides that the respondent shall primarily support the child while the mother pursues her education as a full-time student at Loyola Law School, and finds the wife not in need of alimony. Over the years, the Florida courts have handled numerous custody disputes involving the child.
On 15 June 1996, the child’s Florida guardian ad litem, appointed on 4 March 1996 to represent the child’s interests, submitted a report to the Florida court. The guardian concluded that the child exhibited negative and potentially harmful behaviors and needed counselling. The respondent’s home was described as more than appropriate, the child was found to be comfortable and settled there with friends at home and at school, and both parents were found morally fit. The *403 guardian found that the child was negatively effected by the hostility and friction between his parents, and his therapist noted that every time he' returned from a visit with the mother he was filled with hate for respondent and was in, or got into a crisis. The child expressed a preference for living with his mother because at her house, they “play games, skateboard, go to movies and attend the New Orleans Athletic Club.” The guardian described the mother’s home as “a family vacation,” with plentiful entertainment and not many rules. The guardian also found that the child is very intelligent and has learned how to manipulate the family situation to get what he wants.
The events leading up to the current dispute began in March of 1998 when the minor child traveled to New Orleans to visit with his mother in accordance with a Florida court visitation order. On 6 April 1998, the respondent executed a Florida stepparent adoption ^consent and waiver form. On 21 April 1998, D.W. filed in Juvenile Court for the Parish of Orleans a petition for adoption, attaching to the petition a form signed by the mother on 20 April 1998 consenting to the adoption, respondent’s consent and waiver form, and an information sheet averring that the minor child entered the W. home on 27 March 1998.
A hearing on the petition was set for 5 June 1998. Prior to the hearing, the respondent filed a motion to withdraw D.W.’s petition for adoption, alleging that he had signed the consent form under duress.
On 5 June 1998, the trial court declined to exercise jurisdiction, based upon the Uniform Child Custody Jurisdiction Act, La.R.S. 13:1702, 1706 and 1707. The judgment includes the court’s conclusion that the respondent did not fully comprehend the nature of the surrender, as evidenced by his belief that he retained custody, and that the mother is using these adoption proceedings in an effort to circumvent the many decisions of the Florida courts regarding custody of the child and ancillary matters.
The judgment was signed on 19 June 1998. The court noted the objection of counsel to the judgment and counsel’s announced intention to appeal the judgment. In the judgment the trial judge instructed counsel to file a written notice of appeal. On 26 June 1998, the Ws. filed a motion for a new trial and/or rehearing. The respondent filed a pro se response to relator’s motion for a new trial. On 10 July 1998, the trial court held a hearing on the motion for a new trial and/or rehearing. At the hearing the court stated that it was maintaining the judgment declining jurisdiction because, contrary to what the relator alleged, the court believed the matter was a custody fight disguised as an adoption. The court concluded that the jurisdiction for the custody determination remained in Florida and questioned whether the surrender was valid. At the end of the 10 July 1998 hearing the trial court denied the motion for new trial. The judgment was reduced to writing on 27 July 1998. The relator’s writ application was timely filed in this court on 26 August 1998. On 14 September 1998, respondent filed an opposition to the relator’s emergency writ application.
Relator complains that the trial court erred in declining jurisdiction to hear the adoption matter. The judgment declining jurisdiction places an end to the litigation in the Juvenile | gCourt for the Parish of Orleans and is a final, appealable judgment. La. C.C.P. art. 1841; La. C.C.P. art. 2083. Petitioner requests expedited consideration “due to the detrimental impact of the lower court’s denial of jurisdiction upon the minor child in the form of instability and vulnerability to continued harassment and threats from the [respondent].” To date no testimony has been taken from the respondent. Although the petitioner has attached numerous documents to his writ application, no legal determination has been made that the respondent has in fact harassed or threatened the child. Further, based on the exhibits attached to the respondent’s opposition brief, it appears the mother is now attempting to obtain custody of the child in Florida.[1] Respondent *404 also offered copies of report of telephone threats on 19 April 1998, judgment of the Florida court entered 9 December 1996, holding the mother in contempt of court and ordering her incarcerated until she delivers the child to respondent and revoking her visitation rights, and Florida judgment entered 5 September 1995 referring to the charges and counter-charges between the child’s biological parents and noting that none of the charges against the respondent have been verified. According to the respondent, another hearing is scheduled before the Florida Court on 19 October 1998.
Because the record is complete and because of the obvious psychological needs of the sixteen year old child, we grant the writ application to consider this matter on an expedited basis.
FACTS OF RECORD
At the hearing, relators submitted a notarized act signed by the respondent on 6 April 1998 before a Florida notary public and two witnesses. In the act, respondent unequivocally relinquished all custodial rights to the child and consented to the adoption, averring that his consent was voluntary and not the result of fraud or duress.
The respondent filed a pro se motion to withdraw petition for adoption, alleging that Uthe act was signed under extreme duress, that the Florida courts have consistently found him to be an appropriate custodial parent despite what the court found to be constant unverified allegations against the respondent by the mother, that the mother has retained the child in her custody in defiance of orders of the Florida court and that all of the child’s counselors, guardian ad li-tem, and Florida courts believe it is in the child’s best interests to remain primarily with the respondent. He also objected to the jurisdiction of the juvenile court and noted that he had not been served with a copy of the petition as required by La.Ch.C. art. 1249.
Relator submitted a copy of what purports to be a letter dated 4 April 1998 in which respondent sent the adoption consent to his child and told him that he had executed the document because it was what the child wanted. The record also contains what purports to be a copy of a letter of 12 March 1997 from the child to respondent, saying in part, “I’m really sorry for all the lies but some things weren’t lies.”
Relator submitted the 16 December 1996 affidavit of Eugenia Patru, M.S.W., recounting incidences of “psychological, physical and life-threatening abuse perpetrated upon him, he B.A.D. says, by his father.” [Emphasis added.] Patru also submitted an unverified letter noting that the child told her he had observed that respondent smoked cannabis, snorted a white powder the child “figured out later” was cocaine and used “acid.” The record contains a photocopy of two photographs of the child taken on 7 January 1998 after he was allegedly punched by the respondent. The photographs are unclear and do not show the nature or extent of the complained of injury. A treatment summary from Life Management Center of Northwest Florida, Inc. states that while the respondent was driving, B.A.D. was verbally disrespectful and respondent hit the child in the mouth, whereupon the child attacked respondent.
The report of Michele Giroux, M.A., notes that the child admits to using alcohol, cannabis and tobacco since the age of 8 or 10, has experimented with acid, amphetamines and “scoop”, drinks to intoxication every weekend and uses cannabis daily. The child alleges it is the respondent who has a drug problem, and denies that he himself has or is likely to have |5such a problem. Giroux refers to the child’s apparent decision to remove himself from his father’s custody, and notes that the child has become increasingly ungovernable and “made several complaints of abuse against his father when [respondent] ‘took the bait’ and responded aggressively in kind.”
ANALYSIS
What emerges from the reports and Florida orders and judgments contained in the record is a deeply bitter and hostile relation *405 ship between the mother and respondent, and a disturbed child who is using the situation to manipulate his own circumstances. The trial court has quite properly declined to exercise jurisdiction to involve the courts of Louisiana in this continuing struggle for control which has been playing itself out in the Florida court.
The Uniform Child Custody Jurisdiction Law, La.R.S. 13:1700 et seq., is designed, in part, to avoid jurisdictional competition and conflict with courts of other states, discourage continuing child custody controversies, deter abductions and other unilateral removals of children undertaken to obtain custody awards and facilitate enforcement of custody decrees of other states. La.R.S. 13:1700.
In custody matters, jurisdiction over a person outside Louisiana requires that notice shall be given in a manner reasonably calculated to give actual notice and may be by personal delivery outside Louisiana in the manner prescribed for local service of process, by registered or certified mail, or, if these methods are not available with respect to a nonresident, the court shall appoint an attorney at law to represent him. Proof of service is required, although notice is not required if a person submits to the jurisdiction of the court. La.R.S. 13:1704. In the instant case, there is no evidence of record that proper service was made on respondent or that he voluntarily submitted to the jurisdiction of the trial court.
The trial court’s judgment refers to La. R.S. 13:1706, which allows a court with jurisdiction to decline to exercise its jurisdiction when it determines that this is an inconvenient forum under the circumstances of the case. In determining convenience, the court shall consider if it is in the interest of the child that another state assume jurisdiction, taking into ^account, among other factors, if another state is or recently was the child’s home state, has a closer connection with the child and one or more of the contestants, if substantial evidence is more readily available in another state or if exercise of Louisiana jurisdiction would contravene any of the purposes of the Uniform Act. We find support in the record, as outlined herein, for the trial court’s judgment based on all these factors.
The trial court further declined jurisdiction because relator has wrongfully taken the child from another state or has improperly retained the child after a visit or other temporary relinquishment of physical custody, or has violated any other provision of a custody decree of the other state. La.R.S. 13:1707.
Finding no abuse of the trial court’s discretion to decline jurisdiction of relator’s petition for adoption, we decline supervisory relief and affirm the judgment below.
WRIT GRANTED. JUDGMENT AFFIRMED.

. Respondent alleges that the mother filed a motion for custody with the Florida Court. Attached to the respondent’s brief is an order dated 14 August 1998 denying the mother's motion for declaratory judgment as to jurisdiction and also denying the motion to re-urge emergency motion *404 for temporary custody. This Court is informed by counsel for relator that respondent scheduled a hearing in Florida on 19 October 1998.